JAMES E. PEW, Trustee in Bankruptcy of Estate of EARL R. PRICE, Appellant, v. J. N. PRICE.

**Division One, June 28, 1913.**

1. **EQUITY SUIT: Instructions.** Instructions have no place in a suit in equity.

2. **BANKRUPT ACT: Preference: Recording Deed.** It is not essential to the validity of a conveyance of real estate that the deed be recorded or registered. If the deed was delivered to the grantee four months before the bankruptcy proceeding against the grantor was begun and the possession of the land

followed its delivery, the grantee was thereupon vested with full title as against the grantor, and there was no such preference of the grantee as made the conveyance invalid as to other creditors under the Bankrupt Act, which declares that "where the preference consists of a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

3. ———: ———: ———: **Chattel Mortgage.** The statutes relating to the recording of mortgages of personal property are different in terms and legal effect from the statutes governing the conveyances of real estate. The grantee of land whose deed has not been recorded takes the title as against the grantor's prior or subsequent creditors who do not procure a sale of the land by legal process before the recording of the deed. But a chattel mortgage, if not recorded, is invalid as to subsequent creditors, and is good against prior creditors' where possession of the property is taken before such creditors fix a lien thereon.

4. **FRAUDULENT CONVEYANCE: Bankrupt Act.** A conveyance fraudulently contrived may be set aside because of its fraudulent character, although not invalid under the Bankrupt Act as an illegal preference.

5. ———: **Preference.** An insolvent debtor has the right, in the payment of his debts, to prefer one creditor over another, provided the payment is made and received in good faith, and not with the intent to hinder, delay and defraud any other creditor, except as that might necessarily result from the mere act of paying in full the just debt of the preferred creditor.

6. ———: ———: **Honest Transaction.** Where the property was conveyed for its reasonable value and to discharge an honest indebtedness and neither grantor nor grantee had any purpose to defraud any other creditor, the conveyance was not fraudulent, although it left the grantor insolvent and his other creditors were thereby hindered and delayed.

Appeal from Louisiana Court of Common Pleas.— *Hon. David H. Eby*, Judge.

AFFIRMED.

*James E. Pew* and *Pearson & Pearson* for appellant.

(1) A very comprehensive, terse, and apropos epitome of the law applicable to the facts in this case

is treated in Landis v. McDonald, 88 Mo. App. 347, and Babbitt v. Kelley, 96 Mo. App. 534. (2) The court committed error, both in refusing the two instructions asked by appellant, and in giving the instructions asked by the respondent. The court gave no indications, upon what law, or theory of the law, he applied the evidence and rendered his findings and decree in this case. Babbitt v. Kelley, 96 Mo. App. 535. (3) A debtor is insolvent within the meaning of the Bankrupt Act, where his indebtedness is greater than his assets. (4) The entire testimony of the father and son shows conclusively that at the time of the execution and delivery of said deed, the son was insolvent; and that respondent had not only reasonable cause to believe his son was insolvent, but that he had such facts and statements made to him that absolute knowledge of insolvency was brought directly home to him. (5) The conveyence was fraudulent. The evidence is not only strong enough to show insolvency on the part of the son and knowledge on the part of the father; but that the conveyence was fraudulent on the part of both son and father; and made with the purpose on the part of the son of taking advantage of the Bankrupt Law, as soon as four months should have passed, after the date of the execution and delivery of said deed. (6) The four months' possession only avails as a defense or a bar, when the conveyance is by an instrument, which is not subject to record. Otherwise, the four months' limitation is from the date of the filing for record of such instrument. Babbitt v. Kelley, 96 Mo. App. 535.

*John W. Matson* for respondent..

(1) Earl R. Price was a voluntary bankrupt and therefore, paragraphs a and b of section three of chapter three of the Bankruptcy Law which provides under what conditions ''a petition may be filed against a

person who is insolvent and who has committed an
act of bankruptcy within four months after the com-
mission of such act" and which said paragraph b re-
fers to "transfers of any. of his property with inten-
tion to hinder, delay, or defraud his creditors," or for
the purpose of giving a preference as hereinbefore
provided and which paragraph further provides that
the four months which begin from "the date of the
recording or registering of the transfer. . . if by
law such recording or registering is required or per-
mitted, or, if it is not, from the date when the benefi-
ciary takes notorious, exclusive, or continuous pos-
session of the property," only applies to an involun-
tary bankrupt against whom a petition is filed. (2)
Under the laws of this State a debtor can prefer any
of his creditors and such preferences are not "held
null and void as against the creditors of such debtors
by the laws of the State." Cole v. Cole, 231 Mo. 236;
Growney v. Lowe, 234 Mo. 689; First Nat'l Bank v.
Fry, 216 Mo. 24; Black v. Epstein, 221 Mo. 286. (3)
An unrecorded deed is good against a judgment if re-
corded before an execution sale under the judgment,
and the mere withholding the deed from the record
does not invalidate it as to creditors. In that respect
they bear no analogy to the question of recording as
applied to chattel mortgages. The reason is that the
two classes of deeds are based on wholly different stat-
utes. Simpson v. Stoddard County, 173 Mo. 451; Har-
rison v. Mining Co., 95 Mo. App. 86; Davis v. Owenby,
14 Mo. 170; Deen v. Blane, 195 Ill. 455; Farham v.
Friedmeyer, 109 Ill. App. 54. The record title of the
property in controversy was in the respondent at all
times. The bankruptcy statute in reference to four
months period and the time within which conveyances
are "required" to be recorded do not apply in this
case. The actual, open and notorious possession of the
property and the record title thereof had never been
out of respondent prior to the time that Earl R. Price

was declared to be a bankrupt. Drug Co. v. Drug Co.,. 136 Fed. 396; Tatman v. Humphrey, 184 Mass. 361; Bank v. Connett, 73 C. C. A. 219; Summerville v. Milling Co., 142 Cal. 529; In re Hunt, 139 Fed. 283; In re Chadwick, 140 Fed. 674; Bradley, Clark & Co. v. Benson, 93 Minn. 91; Seager v. Lamm, 95 Minn. 325; Joseph v. Raff, 176 N. Y. 611; Sabin v. Camp, 98 Fed. 974.

## STATEMENT BY THE COURT.

In 1898, J. H. Price conveyed to his son, Earl R. Price, eighty acres of land, whereon was a two-story house of seven rooms, for the consideration of $3250, which was paid in the following manner: $1000 thereof to be a gift to his son; $500 to be paid in cash, and $1750 to be evidenced by the son's note to the father. The deed to Earl R. Price was delivered, but not recorded, and he took possession of the land and lived there until August 15, 1908. Just prior to that date, he was pressed by his father for the payment of the balance due on the note given for part of the purchase money. Not being able to comply with this demand it was finally agreed between them that he should quit-claim the land, then worth $3200, to his father, who would thereupon surrender the note and an account for taxes paid, then amounting to $3175. This was done. The father did not record the quit-claim deed to him. Just prior to the reconveyance of the land, the house thereon was burned, for which the son collected in insurance at one time $1000 and later a subsequent installment of $500. The son was insolvent and then indebted in the sum of $1000. About $790 thereof evidenced by his notes and the remainder by the notes of himself and his father. He gave $800 of the insurance money to his wife. The father who had received back his warranty deed from his son, withheld it from record under the advice of his attorney until the 5th day

of April, 1909.   On March 5, 1909, the son filed a
petition in the Federal court at St. Louis seeking to
be adjudged a voluntary bankrupt. He listed the claims
heretofore mentioned, some of which in the meantime
had been reduced to judgments against him.   One of
these creditors after his house was burned, sought un-
availingly to collect his claim, and tried unsuccess-
fully to get the defendant to influence his son to pay.

Plaintiff James E. Pew was appointed trustee in
the bankruptcy proceeding and instituted this suit for
the purpose of annulling the reconveyance of the land
by the son to the father on the ground that it was a
fraudulent preference under the Bankrupt Act.   His
petition on the point is to-wit:

"Plaintiff further states that after making the
execution and delivery of said above deed, from the
said Earl R. Price, bankrupt, to his father James H.
Price, the said deed was on purpose, and intentionally
withheld from the recorder's office in the county of
Pike, State of Missouri; that said deed was not and
had not been on the 5th day of March, 1909, the date
the said Earl R. Price was adjudged a bankrupt,
filed for record, nor recorded in the recorder's office in
the county of Pike and State of Missouri.

"Plaintiff further states that the said conveyance
made as aforesaid was made within four months
of the filing of the petition, and the adjudication of
the said Earl R. Price a bankrupt, within the mean-
ing of the bankrupt enactment, and is therefore void
as against the other creditors of the said Earl R.
Price, bankrupt."

The answer was a general denial and a claim of a
vendor's lien, and alleged that the deed given was
withheld from record upon agreement that it should
in that way secure the note for the balance of the pur-
chase money.   The answer also averred the foregoing
facts and prayed for general relief.

At the end of the trial the court refused certain instructions asked by plaintiff and declared the law to be that he could not recover under the pleadings and evidence, and gave judgment for the defendant from which this appeal is taken.

## OPINION.

### I.

BOND, J. (After stating the facts as above.)— This being an action in equity instructions have no place in it. [Troll v. Spencer, 238 Mo. l. c. 92; Anthony v. Kennard Bldg. Co., 188 Mo. 704; Gerstner v. Payne, 160 Mo. App. l. c. 296; Epstein v. Railroad, 143 Mo. App. 135.]

The only question presented by this appeal is for whom, under the case submitted, the decree should go; or has the plaintiff made out a case for equitable relief by a preponderance of the competent evidence contained in the record?

The legal questions presented are: first, whether the reconveyance by the son to the father was a voidable preference under the Bankrupt Act? Second, if not, whether it was a fraudulent disposition of his property, and hence voidable as to his creditors or their representatives of the grantor? As to the first question. The language of the provision of the Bankrupt Act bearing on it, is that, "Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

**Preference:**
**Conveyance:**
**Not Recorded.**

It is not essential to the conveyance of real estate between parties, that the instrument of transfer should be either registered or recorded. Here the deed from the son to the father was delivered more than four months before the bankruptcy proceeding was begun, and the possession of the land followed the

deed. The grantee was thereupon invested with full title as against his son. [R. S. 1909, secs. 2809, 2810, 2811.] We see no occasion under these facts to stretch the Bankrupt Act by construction beyond the natural import of its terms. These do not bring the transaction between the parties within its provision. There has been some diversity of view as to the meaning of the last clause above quoted. Its present language resulted from the amendment of 1903.

In his valuable work on Bankruptcy, Mr. Collier (9 Ed., p. 799), in speaking of the meaning of the terms contained in the last clause above quoted, says: "The failure to record a deed until after the grantor's adjudication as a bankrupt, is not sufficient to make it an unlawful preference, in the absence of a fraudulent agreement, where, under the State law, the unrecorded instrument is valid between the parties and against general creditors." He, however, concedes that there are cases which hold that if recording or registration is required for any purpose, though not for all, it is to be deemed as required within the meaning of the above provision of the Bankrupt Act. He then states as his own conclusion on the subject the true rule to be as follows: "The purpose of the amendment will be effectuated by construing it as referring to transfers which required recording or registration to make them valid as against general creditors."

This statement of the law is fully sustained by the able judgment of SANBORN and CARLAND, Circuit Judges. [Sturdivant Bank v. Schade, 195 Fed. 188.] The question in that case was the same as the one presented here. There the trustee of a bankrupt corporation sought to annul a transfer by it of certain notes, which were secured by a deed of trust, to a bank as collateral security. The transfer of the notes to the bank was made more than four months before the corporation hypothecating them became a bankrupt, but the deed of trust securing them was not recorded

for four months before said bankruptcy. The contest was between the bank and the trustee of the corporation on these facts. The court held, after a review of our decisions, beginning with Davis v. Owenby, 14 Mo. 170, and including Harris on Machine Worke v. Bowers, 200 Mo. 219, that these constructions of the Missouri statute (R. S. 1909, secs. 2809, 2811) were controlling and established the law to be, that the grantee of an unrecorded deed takes title as against the *general creditors* of the grantor who have not, by execution or attachment, procured the sale of the land before the recording of the deed. The court further held that the trustee of the bankrupt corporation must be deemed as having a lien on the land described in the trust deed, and since that had not been enforced by him before the bank put its trust deed on record, he had no rights superior to the bank. We think the conclusion thus stated is clear in logic and sustained by the Missouri cases cited in the opinion. The application of that rule to the present case affords a complete solution for the first question under review. The facts here are that the reconveyance from the bankrupt to his father was made more than four months before the proceedings in bankruptcy were begun and the quit-claim deed was actually recorded before the present suit of the trustee was instituted. So that, when this step was taken, the defendant in this case had put himself in a status which would have protected him against an execution or an attachment creditor of his grantor, who had not theretofore caused a sale of the land; and hence, under the rulings of the Federal court, he was equally protected against the trustee in bankruptcy.

This being so, it is unnecessary to deal with the question as to whether the defendant had reasonable grounds to believe the reconveyance to him would work a preference. For whether that was true or not, the fact that this occurred outside of the time wherein

preferences are forbidden by the Bankrupt Act, relieves it from attack as a violation of that act.

We have not overlooked the decisions cited by the learned counsel for appellant from the courts of appeals. [Landis v. McDonald, 88 Mo. App. 335; Babbitt v. Kelley, 96 Mo. App. 529.] Neither of these cases are in point, for they relate to a construction of our statutes as to the recording of mortgages of personal property, which are different in terms and legal effect from the statutes governing the conveyances of land. [Harrison v. South Carthage Min. Co., 95 Mo. App. 80; R. S. 1909, sec. 2861.] In the latter case, as has been seen, the grantee whose deed is not recorded, takes the title as against prior or subsequent creditors of the grantor who do not procure a sale of the land by legal process before the recording of the deed. In the former case (chattel mortgages, etc.), the instrument is, if unrecorded, invalid as to subsequent creditors (Babbitt v. Kelley, 96 Mo. App. l. c. 534; R. S. 1909, sec. 2861), and is good against prior creditors where possession of the property is taken before such creditors fix a lien thereon. [Landis v. McDonald, 88 Mo. App. 335.]

## II.

The second question concerns the character of the transaction between the father and son, as judged by the law of this State defining fraudulent conveyance and valid preferences of creditors, for if the deed from the son to his father was fraudulently contrived it may be set aside for that reason, although not amenable to the provision of the Bankrupt Act.

Fraudulent Conveyance: Preference.

The law is well settled, that an insolvent debtor has the right to prefer, in payment of his debts, one creditor over another, provided the payment is made and received in good faith and not with intent to

hinder, delay, or defraud any other creditor, except so far as that might necessarily happen, by the mere act of paying in full the just debt of the preferred creditor. [Growney v. Lowe, 234 Mo. 689; Cole v. Cole, 231 Mo. 1. c. 260, and cases cited.]

The facts and circumstances in this case showed that the property was conveyed for its reasonable value and to discharge an honest indebtedness, and they further show that neither party to the transaction had any purpose, by its accomplishment, to defraud any other creditor of the grantor. It was not therefore in contravention of the Statute of Frauds. [R. S. 1909, sec. 2881.]

The judgment of the circuit court is affirmed. *Woodson, P. J., Lamm* and *Graves, JJ.,* concur.